STATE OF CONNECTICUT *v.* PETER PEPE

COTTER, C. J., LOISELLE, BOGDANSKI, LONGO and SPEZIALE, Js.

Argued April 5—decision released September 5, 1978

*Alan E. Silver,* with whom, on the brief, were *Stuart M. Ketaineck, Michael R. O'Connor* and *Michael Wolak III,* for the appellant (defendant).

*William F. Gallagher,* special assistant state's attorney, with whom on the brief, was *Arnold Markle,* state's attorney, for the appellee (state).

SPEZIALE, J. The defendant, Peter Pepe, has appealed from a judgment rendered on a jury verdict finding him guilty of receiving and concealing stolen goods. He claims that the trial court erred: (1) in refusing to suppress items seized during the course of a search of his premises; and (2) in permitting cartons containing seized items to be present in the courtroom in full view of the jury, and marked as exhibits for identification. We do not agree.

The underlying facts are not in dispute. In February, 1969, the police obtained a search warrant for the person and home of Pepe. The articles specified in the warrant were narcotics. The officer in charge of executing the warrant first went to Pepe's place of business, identified himself, showed Pepe the warrant, and searched his person. Several police officers then accompanied Pepe to his home. The house in which Pepe resided had two apartments, one on the first floor, occupied by Pepe's mother, and one on the second floor, occupied by

Pepe and his family. The third floor was an attic, which was used for storage purposes by the occupants of the house.

After thoroughly searching the second-floor apartment for narcotics, the police told Pepe that they wanted to go up to the third floor. In their presence, Pepe produced a key and unlocked the door leading to the third-floor staircase. The attic consisted of two rooms, one locked and the other unlocked. At the request of the police, Pepe got the key and unlocked the locked room. Inside this room, the police found boxes of cosmetics, perfume, aftershave lotion and talcum powder, along with cigarette lighters, a wrist watch, a television set and other items. Some of the items had stickers bearing the name Chapel Drug Store, some bore price tags with the names of other stores, and many of the tags were whole. Most of the items appeared to be new; they were for the most part in cartons, neatly piled, and had not been removed from their original boxes. These items, along with others which the police had reason to believe might be stolen, were seized and taken to police headquarters to be checked against serial numbers from known burglaries.

The defendant subsequently filed a motion to suppress the seized evidence, which motion was denied by the court (*Shapiro, J.*). The motion was renewed at trial and again denied by the trial court (*A. Healey, J.*). The denial of these motions is the basis of the defendant's first claim of error. The thrust of his argument is that the absence of any reference to stolen goods in the search warrant rendered the seizure of such items a violation of his

constitutional right to be free from unreasonable searches and seizures. U.S. Const., amend. 4; Conn. Const., art. 1, § 7.

The defendant does not challenge the validity of the search warrant, nor does he contend that the search exceeded the scope of the warrant, which provided for a search of "[t]he person of Peter A. Pepe . . . his place of abode, 422 West Rock Ave., 2nd floor, the cellar & attic portion controlled by Peter Pepe." Instead, he urges that because the police had reason to believe that they would find such items on the premises and intended to seize them, the failure to mention stolen goods in the warrant was a violation of the constitutional requirement that a search warrant particularly describe the things to be seized. *Coolidge* v. *New Hampshire,* 403 U.S. 443, 471, 91 S. Ct. 2022, 29 L. Ed. 2d 564 (1971); *Marron* v. *United States,* 275 U.S. 192, 196, 48 S. Ct. 74, 72 L. Ed. 231 (1927). In support of this claim, the defendant stresses the following: After the warrant to search for narcotics had been issued—but about an hour before it was actually executed—the officer in charge of the search received a tip that stolen items had been seen on the defendant's premises. This officer knew of the defendant's reputation for dealing in stolen goods, and knew that Pepe had previously been arrested for possession of stolen goods. The officer also knew that the Chapel Drug Store had been broken into in November, 1968, that cosmetics, perfumes and watches had been stolen, and that the merchandise had not been recovered. Thus, the defendant argues, the narcotics warrant was used to camouflage an exploratory search for stolen goods. Under the circumstances of this case, we find that this claim cannot be supported.

While it is true that general searches are condemned and that police executing a search warrant may seize only those items specified in the warrant; e.g., *Marron* v. *United States,* supra; the long recognized exception to this rule is that " 'where a police officer has a warrant to search a given area for specified objects, and in the course of the search comes across some other article of incriminating character, the property is seizable under the plain view doctrine.' *United States* v. *Pacelli,* 470 F.2d 67, 70 (2d Cir. 1972), cert. denied, 410 U.S. 983, 93 S. Ct. 1501, 36 L. Ed. 2d 178 (1973), citing *Coolidge* v. *New Hampshire,* 403 U.S. 443, 465, 514–16, 91 S. Ct. 2022, 29 L. Ed. 2d 564 (1971)." *United States* v. *Canestri,* 518 F.2d 269, 274 (2d Cir. 1975); *United States* v. *Rollins,* 522 F.2d 160, 166 (2d Cir. 1975), cert. denied, 424 U.S. 918, 96 S. Ct. 1122, 47 L. Ed. 2d 324 (1976); *State* v. *McClain,* 171 Conn. 293, 297, 370 A.2d 928 (1976); 68 Am. Jur. 2d, Searches and Seizures, §§ 85, 88; see also *State* v. *Krause,* 163 Conn. 76, 81–83, 301 A.2d 234 (1972).

The plain view exception will thus validate a seizure of items not specified in a warrant where the initial intrusion is lawful, the discovery of the evidence inadvertent, and the seizing officers have reason to believe that the seized items are evidence of a crime.

In the case before us, the first condition—the lawfulness of the initial intrusion—is clearly met, since the police were operating within the scope of a valid warrant. The defendant argues, however, that the discovery was not "inadvertent" because the police were forewarned that they might find stolen goods on the premises. In so arguing, the defendant misconstrues the requirement of inadvertency. The police need not be caught completely

by surprise for a discovery to be inadvertent, so long as they did not anticipate the discovery or know in advance the location of the evidence and intend to seize it. *Coolidge* v. *New Hampshire,* supra, 470–71; *Mapp* v. *Warden,* 531 F.2d 1167, 1172 (2d Cir. 1976), cert. denied, 429 U.S. 982, 97 S. Ct. 498, 50 L. Ed. 2d 592; see *United States* v. *Cushnie,* 488 F.2d 81 (5th Cir. 1973), cert. denied, 419 U.S. 968, 95 S. Ct. 233, 42 L. Ed. 2d 184 (1974). The fact that the police were aware of the *possibility* that they might find stolen goods is nevertheless significant: it provided them with reason to believe that the items they discovered in the attic were indeed contraband and thus justified their seizure under the plain view doctrine. See *Coolidge* v. *New Hampshire,* supra, 466; *United States* v. *Canestri,* supra, 274; compare *United States* v. *Gray,* 484 F.2d 352, 355 (6th Cir. 1973), cert. denied, 414 U.S. 1158, 94 S. Ct. 916, 39 L. Ed. 2d 110 (1974); *United States* v. *Sokolow,* 450 F.2d 324, 326 (5th Cir. 1971). Furthermore, because this was evidence which could easily be destroyed or tampered with, it would have been unreasonable to require the police to leave the premises and return with a warrant particularly describing the stolen goods. This was clearly within the doctrine of exigent circumstances. See *Coolidge* v. *New Hampshire,* supra, 467–68; *United States* v. *Gargotto,* 510 F.2d 409, 411 (6th Cir. 1974), cert. denied, 421 U.S. 987, 95 S. Ct. 1990, 44 L. Ed. 2d 477 (1975); *United States* v. *Cushnie,* supra, 82. We hold, therefore, that the defendant's motions to suppress were properly denied.

We next consider the claim that the court erred in permitting several covered boxes of confiscated items to be present in the courtroom and marked as exhibits for identification.

At trial, during cross-examination of the officer who had been in charge of the search, it was defense counsel who initiated the inquiry as to the whereabouts of items seized from the defendant's attic but not introduced into evidence. The implication was that an adverse inference should be drawn from the state's failure to produce all the items seized. The following day the state's attorney brought several cartons containing these items into the courtroom and offered them into evidence—not as stolen goods, but merely to identify the items seized from the attic and to demonstrate their availability. The boxes were marked for identification over the defendant's objection. But see *Duncan* v. *McTiernan,* 151 Conn. 469, 470, 199 A.2d 332 (1964) (as a matter of law, trial court lacks discretion to refuse to permit exhibits to be marked for identification). Subsequently, the *defendant,* over the state's objection, offered and had admitted into evidence many of the items contained in the boxes. Finally, at the conclusion of the trial, the jury were instructed that "the burden which rests upon the State to prove the accused guilty beyond a reasonable doubt includes the essential elements of proving that the goods were stolen. The accused does not have the duty to prove that they are not stolen goods."

The defendant bears the burden of establishing harmful material error by the trial court. *State* v. *Addazio,* 169 Conn. 416, 427, 363 A.2d 153 (1975); *State* v. *L'Heureux,* 166 Conn. 312, 323, 348 A.2d 578 (1974). On the facts before us, we hold that this burden has not been met.

There is no error.

In this opinion the other judges concurred.