STATE OF CONNECTICUT *v.* GLADYS HOBSON
(2862)

HULL, SPALLONE and BIELUCH, Js.

Argued February 14—decision released June 24, 1986

*John R. Williams,* for the appellant (defendant).

*Paul M. Scimonelli,* assistant state's attorney, with whom, on the brief, were *Arnold Markle,* state's attorney, and *Julia DiCocco Dewey* and *Paul J. Devlin,* assistant state's attorneys, for the appellee (state).

HULL, J. After a trial to a jury, the defendant was convicted of larceny in the third degree in violation of General Statutes § 53a-119 (8) and § 53a-124.[1] In this appeal from that judgment, she claims that the trial court erred in three respects: (1) in refusing to suppress the fruits of two searches of her home; (2) in failing to declare a mistrial because of alleged jury miscon-

---

[1] General Statutes § 53a-119 (8) provides in pertinent part: "A person is guilty of larceny by receiving stolen property if he receives, retains, or disposes of stolen property knowing that it has probably been stolen or believing that it has probably been stolen, unless the property is received, retained or disposed of with purpose to restore it to the owner."

General Statutes § 53a-124 (a) provides in pertinent part: "A person is guilty of larceny in the third degree when he commits larceny as defined in section 53a-119 and: (1) The value of the property or service exceeds one thousand dollars."

duct; and (3) in denying her motion for judgment of acquittal based on insufficiency of the evidence. We find no error.

When ruling on the defendant's motion to suppress, the trial court could reasonably have found the following facts. In September of 1982, officer John Dattilo of the New Haven police department obtained a warrant authorizing a search of the defendant's Hazel Street home for drugs which Dattilo believed were being sold by one of the defendant's adult sons who lived with her.[2] While executing that warrant, Dattilo observed many articles of clothing of differing sizes, some with store tags still attached, various kinds of consumer goods, including stereo equipment, five television sets, cameras, projectors and numerous pieces of jewelry. Because of the quantity and diversity of goods, Dattilo suspected that some of the merchandise was stolen. He therefore recorded the serial numbers of several of the items and through a later computer check determined that two of them, a Sony television set and a handgun, had been reported stolen. On the basis of this information, Dattilo obtained a second warrant authorizing him to search the defendant's home and person and to seize the television and the gun.

On October 7, 1982, accompanied by other officers including Francis Cacioli, the detective in the New Haven police department who was in charge of the theft recovery unit, Dattilo entered the defendant's house to execute the warrant. In addition to seizing the two items listed in the search warrant, the officers took approximately 148 other articles they reasonably believed might be stolen. In an attempt to determine whether any of the additional items was in fact stolen, the police put them on display at headquarters and invited members of the public to view them. Several individuals identified items as their property, and the

---

[2] As a result of the search, narcotics and paraphernalia were discovered.

defendant was charged with larceny of those items and of the television set and the gun. At trial, the defendant moved to suppress the television set, the gun and the other objects, claiming that both searches were invalid and that the items seized were, therefore, the inadmissible fruits of an illegal search. The trial court denied the motion.

The defendant's first claim on appeal is that, during their initial search of her home, the police, by obtaining the serial numbers from the gun and the television set, conducted a search of those items.[3] She argues that this search was unlawful because the warrant under which the police entered her home authorized them to look for drugs and drug paraphernalia only, an undertaking which one of the police officers who was present at the initial search conceded would not be aided by looking for the serial numbers. We reject the defendant's assertion that the police "searched" the television set and the gun.[4]

Our Supreme Court has recognized that when a police officer observes items in open view that observation does not constitute a search. *State* v. *Federici,* 179 Conn. 46, 56, 425 A.2d 916 (1979); see also *Hing Wan Wong* v. *Liquor Control Commission,* 160 Conn. 1, 6, 273 A.2d 709 (1970), cert. denied, 401 U.S. 938, 91 S. Ct. 931, 28 L. Ed. 2d 218 (1971). Here, the police officers saw the television set in open view in the defendant's bedroom while they were executing a valid search warrant. Accordingly, their *discovery* of the television set clearly did not constitute a search. We decline to

---

[3] The defendant does not challenge the search of her home, nor could she since the first warrant authorized the police to search the entire home for narcotics and paraphernalia. Rather, it is the "search" of the gun and the television which the defendant claims was unlawful on the first visit.

[4] A search occurs where police conduct violates some expectation of privacy an individual holds in an object or place and that expectation is one that society is prepared to recognize as reasonable. *Katz* v. *United States,* 389 U.S. 347, 361, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967) (Harlan, J., concurring).

hold, as the defendant urges, that the view of the television set became a search solely because the police moved it away from the wall to uncover its serial number. " '[S]ome investigative procedures designed to obtain incriminating evidence from the person are such minor intrusions upon privacy and integrity that they are not generally considered searches or seizures subject to the safeguards of the fourth amendment.' *Bouse* v. *Bussey,* 573 F.2d 548, 550 (9th Cir. 1977)." *United States* v. *Viera,* 644 F.2d 509, 510–11 (5th Cir.), cert. denied, 454 U.S. 867, 102 S. Ct. 332, 70 L. Ed. 2d 169 (1981).[5] We hold that the police conduct in this case was of such a nature.

The defendant also claims that the police searched the gun by looking for its serial number. There was, however, no testimony at the suppression hearing as to where the serial number on the gun was located, and, therefore, no basis for determining whether or not a search of that item occurred. Accordingly, the trial court did not err in denying the defendant's motion to suppress.[6]

The defendant next claims that by seizing 148 items in addition to the two authorized by the warrant, the police, during their second search of her home, conducted a general search in violation of the fourth amendment to the United States constitution and article 1, § 7 of the Connecticut constitution. The state con-

---

[5] In *United States* v. *Viera,* 644 F.2d 509, 510–11 (5th Cir.), cert. denied, 454 U.S. 867, 102 S. Ct. 332, 70 L. Ed. 2d 169 (1981), the court held that the police did not conduct a search of a piece of luggage by lightly pressing their hands along its exterior to prepare it for sniffing by a narcotics detection dog.

[6] The defendant also claims that the police "searched" other items by looking for their serial numbers, and thereby unlawfully exceeded the scope of the warrant. She has not, however, provided an adequate record for the court to determine the merits of this claim. While there was testimony at the suppression hearing that the police copied down serial numbers from many items, there was no testimony as to where the serial numbers were located. Accordingly, we cannot determine whether any search of those items occurred, and cannot, therefore, determine the merits of the defendant's claim.

tends that the seizure of these items was lawful under the plain view doctrine.

" ' "[W]here a police officer has a warrant to search a given area for specified objects, and in the course of the search comes across some other article of incriminating character, the property is seizable under the plain view doctrine." *United States* v. *Pacelli,* 470 F.2d 67, 70 (2d Cir. 1972), cert. denied, 410 U.S. 983, 93 S. Ct. 1501, 36 L. Ed. 2d 178 (1973), citing *Coolidge* v. *New Hampshire,* 403 U.S. 443, 465, 514–16, 91 S. Ct. 2022, 29 L. Ed. 2d 564 (1971).' *United States* v. *Canestri,* 518 F.2d 269, 274 (2d Cir. 1975)." *State* v. *Pepe,* 176 Conn. 75, 79, 405 A.2d 51 (1978). The plain view doctrine may be invoked to validate the seizure of contraband or stolen goods not mentioned in a warrant where two requirements[7] are satisfied: (1) the initial intrusion which enabled the police to view the items was lawful; and (2) the police had probable cause to believe that the items were contraband or stolen goods.[8] *State* v. *Pepe,* supra.

Here, the first precondition for application of the plain view doctrine was fulfilled. The police had a legitimate prior justification for being in a position to view the merchandise; they were executing a valid warrant to search for and seize the television set and the gun.

---

[7] There has been extensive dispute in the United States Supreme Court; see *Texas* v. *Brown,* 460 U.S. 730, 103 S. Ct. 1535, 75 L. Ed. 2d 502 (1983); *Coolidge* v. *New Hampshire,* 403 U.S. 443, 91 S. Ct. 2022, 29 L. Ed. 2d 564 (1971); over whether a third requirement, that the police discover the items inadvertently, should be applied. While this area has not been definitively resolved, it is clear that in Connecticut "inadvertence is not required if the items seized fall under the category of contraband, stolen property or objects dangerous in themselves." *State* v. *Couture,* 194 Conn. 530, 547, 482 A.2d 300, cert. denied, 469 U.S. 1192, 105 S. Ct. 967, 83 L. Ed. 2d 971 (1984).

[8] Where the seized object is evidence, as opposed to contraband, the police must have probable cause to believe that it was "reasonably related, in an evidentiary sense, to the commission of the crime." *State* v. *Onofrio,* 179 Conn. 23, 41, 425 A.2d 560 (1979).

Whether the requirements for applying the doctrine were met, therefore, turns on whether there was probable cause to believe that the seized items were stolen. Probable cause to believe that goods are stolen exists when there is enough trustworthy information supporting that proposition that a person of reasonable caution would be justified in believing it. See *State* v. *Asherman,* 193 Conn. 695, 705, 478 A.2d 227, cert. denied, 470 U.S. 1050, 105 S. Ct. 1749, 84 L. Ed. 2d 814 (1984). "The quantum of evidence necessary to establish probable cause exceeds mere suspicion, but is substantially less than that required for conviction." *State* v. *Acquin,* 187 Conn. 647, 657, 448 A.2d 163 (1982), cert. denied, 463 U.S. 1229, 103 S. Ct. 3570, 77 L. Ed. 2d 1411 (1983).

In addition to the television set and the gun, the state introduced into evidence several other items which were seized during the second search of the defendant's home: a pocket watch, a cameo pin, a bracelet, an earring, some coins, a creamer, a sugar bowl, a gravy ladle and accompanying tray, and a ring. When the police seized these items, they had extensive information to support their hypothesis that they were stolen. Before the police went into the defendant's home to execute the first warrant, they had probable cause to believe that narcotics were being sold from the home, and in fact, when they entered the home on that occasion, they found narcotics and narcotics paraphernalia. They knew, on the basis of their training and experience, that stolen clothing and consumer goods are often accepted in lieu of cash as payment for drugs, and they saw large quantities of such items in the defendant's home: stacks of designer jeans in different sizes, a rack containing articles of clothing that still had store tags attached to them, stereos, cameras, television sets and several pieces of jewelry. When the police entered the home to execute the second warrant,

having the information gained from the first search in mind, they again found similar objects present. They also discovered a couple of trash bags full of silverware and similar objects, some with initials or inscriptions which did not refer to the defendant or her sons. Also present was a case of exercise equipment, and a fur coat with initials that did not match those of any of the occupants of the house.

"Our cases have made clear that '[t]here is often a fine line between mere suspicion and probable cause, and "[t]hat line necessarily must be drawn by an act of judgment formed in light of the particular situation and with account taken of all the circumstances." *Brinegar* v. *United States,* [338 U.S. 160, 176, 69 S. Ct. 1302, 93 L. Ed. 1879 (1949)].' *State* v. *Penland,* 174 Conn. 153, 155–56, 384 A.2d 356, cert. denied, 436 U.S. 906, 98 S. Ct. 2237, 56 L. Ed. 2d 404 (1978)." *State* v. *Acquin,* supra. Here, the evidence available was sufficient to cross this line and provide the police with probable cause to believe that the articles were stolen.

In light of these factors, we accept the state's contention that the technical requirements for invocation of the plain view doctrine were satisfied. There is, however, an additional limitation to application of the doctrine; it may not be used to permit a general or exploratory search. *Coolidge* v. *New Hampshire,* 403 U.S. 443, 466, 91 S. Ct. 2022, 29 L. Ed. 2d 564 (1971); *State* v. *Onofrio,* 179 Conn. 23, 40, 425 A.2d 560 (1979). The application of the doctrine to validate the seizure of some of the the articles found in the defendant's home would have such an effect. Here, the second warrant was extremely precise, authorizing the seizure of only two specified articles: the gun and the television. In spite of this, and even though they found the television and the gun in the defendant's bedroom where they knew the articles had previously been located, the police searched several other rooms of the house, including

the attic. As a result of the search of the attic, the police discovered and seized the creamer, sugar bowl, and the gravy ladle and its tray. In searching for and seizing these items, the police ignored the limits of the warrant and thereby conducted a general or exploratory search in violation of the prohibition on unreasonable searches and seizures in both our state and federal constitutions. Accordingly, the trial court erred in refusing to suppress these items.

The trial court correctly determined that the items seized from the defendant's bedroom should not be suppressed. The police had a warrant authorizing them to seize the television and the gun, and they knew that the gun and television were previously located in the defendant's bedroom. The police, therefore, had authority to enter the defendant's bedroom and search that room to the extent necessary to find the gun and the television. While lawfully present in the defendant's room the police saw, in open view on or around the defendant's dresser, the pocket watch, pin, bracelet, earring, coins and ring. They had, as discussed above, probable cause to believe that those items were stolen. Accordingly, under the plain view doctrine, the police were entitled to seize those items. *State* v. *Pepe,* supra, 79.

Having determined that the trial court should have suppressed the gravy ladle, tray, sugar bowl and creamer, we must decide what remedy should be awarded to the defendant. To prove the defendant committed larceny in the third degree, the state was required to show that the value of the stolen items she received or retained exceeded $1000. General Statutes § 53a-124. To establish the value of the stolen items, the state elicited testimony from Joseph Pari, an auctioneer and appraiser. Pari testified that the market value of the television set when stolen was approximately $400. He estimated that the combined value of

the other items taken from the defendant's bedroom, exclusive of the television and the gun, was approximately $542.65. He testified that the combined value of the four items taken from the attic was approximately $80. Stephen Prindle, the owner of a gun store, testified that the market value of the gun on October 7, 1982, was approximately $100. Given this evidence, the jury could reasonably have concluded that the combined fair market value of the items legally seized was over $1000 as required to sustain a conviction under General Statutes § 53a-124. Had the court properly suppressed the bowl, creamer, ladle and tray, the jury would have been allowed to consider the value of only the television, gun, watch, pin, bracelet, earring, coins and ring which the state's experts testified was approximately $1042.65.[9] Accordingly, even had the trial court properly suppressed the items found in the attic, there would still have been sufficient evidence from which the jury could have found that the defendant committed larceny in the third degree. We conclude, therefore, that the trial court's error was harmless.

The defendant next claims that the trial court erred in denying her motion for mistrial based on alleged juror misconduct. Before the close of evidence, while an argument was being made with the jury absent, defense counsel claimed to have heard someone in the adjoining jury deliberation room shout that "It's a one of a kind earring. She remembers what it was."[10] After the incident occurred, defense counsel moved for a mis-

---

[9] While the defendant asserted that the television and the gun should be suppressed as the fruits of the unlawful first search, she did not claim, nor could she claim given the warrant, that the seizure of the television and the gun was unlawful independent of the first search. Since we have rejected the defendant's argument as to the first "search," we find no basis for suppressing the television and the gun now.

[10] The comment apparently referred to the testimony of one of the state's witnesses in which she related that her home had been burglarized and also described some of the articles, including an earring, which had been taken.

trial, and the court denied the motion and noted the defendant's exception. The defendant now claims that any premature juror deliberation requires reversal if the jurors did more than merely refresh their memory of the evidence. We reject the defendant's argument.

In *State* v. *Washington,* 182 Conn. 419, 429, 438 A.2d 1144 (1980), our Supreme Court held that "it is error of constitutional magnitude for the trial judge expressly to instruct the jurors that they may discuss the case among themselves prior to its submission to them . . . ." Accord *State* v. *Castonguay,* 194 Conn. 416, 434, 481 A.2d 56 (1984). In this case, however, the trial court did not expressly allow the jurors to deliberate prematurely. In fact, it affirmatively told them not to. Where a trial court does not authorize the jury to deliberate prematurely, a finding of error is not automatic. In such circumstances, "[t]he test is 'whether or not the misconduct has prejudiced the defendant to the extent that he has not received a fair trial.' *United States* v. *Klee,* [494 F.2d 394, 396 (9th Cir. 1974)]." *State* v. *McCall,* 187 Conn. 73, 77, 444 A.2d 896 (1982). Here, there is no indication that the fairness of the defendant's trial was in any way affected by any premature deliberation. "A trial court has a large measure of discretion in dealing with a motion for a mistrial; *State* v. *Martinez,* 173 Conn. 541, 544, 378 A.2d 517 (1977); and its decision as to the fairness of the trial must be afforded great weight." *State* v. *McCall,* supra, 77. The trial court did not abuse its discretion in denying the defendant's motion for mistrial.

The defendant claims that the state failed to prove two of the elements of the crime of larceny beyond a reasonable doubt: that the defendant possessed the stolen items, and that she possessed them knowing that they were probably stolen. "Appellate review of such a claim requires us to undertake a two step analysis. 'We first review the evidence presented at the trial,

construing it in the light most favorable to sustaining the jury's verdict. We then determine whether, upon the facts thus established and the inferences reasonably drawn therefrom, the jury could reasonably have concluded that the cumulative effect of the evidence established guilt beyond a reasonable doubt.' *State* v. *Sinclair,* 197 Conn. 574, 576, 500 A.2d 539 (1985)." *State* v. *Brown,* 198 Conn. 348, 352, 503 A.2d 566 (1986). Applying this standard, we conclude that the evidence was sufficient to support the jury's verdict.

The defendant first challenges the sufficiency of the state's proof that she possessed the stolen items. "In criminal law, the word 'possession' generally denotes ' "an intentional control of a designated thing accompanied by knowledge of its character." [Citation omitted.]' *State* v. *Harris,* 159 Conn. 521, 531, 271 A.2d 74 (1970), cert. dismissed, 400 U.S. 1019, 91 S. Ct. 578, 27 L. Ed. 2d 630 [1971]; see Webster, Third New International Dictionary." *State* v. *Kas,* 171 Conn. 127, 130, 368 A.2d 196 (1976). The evidence presented at trial, construed in the light most favorable to sustaining the verdict, showed that the defendant owned and lived in the house from which the items were seized. She admitted to possessing, in fact she claimed to own, the television which was found in her bedroom. As discussed above, the pocket watch, pin, bracelet, earring, coins and ring were also found in the defendant's bedroom, as was the gun. The objects were on top of her dresser or in the dresser area. The jury can hardly be deemed to have engaged in speculation by concluding that the defendant possessed items that were found out in the open in her own bedroom.[11] The defendant was not

---

[11] Generally, when faced with a claim of insufficient evidence, we review the evidence as presented at trial since if the evidence *as presented* were insufficient to support a guilty verdict, then "the state would be barred by double jeopardy principles from retrying the defendant, and [she] would be entitled to a judgment of acquittal rather than a new trial. *Burks* v. *United States,* 437 U.S. 1, 98 S. Ct. 2141, 57 L. Ed. 2d 1 (1978)." *State* v. *Grant,*

merely present in the home when the objects were found; see id.; she owned the home and she lived there. See *State* v. *Chisolm,* 165 Conn. 83, 84, 328 A.2d 677 (1973) (evidence that defendant possessed narcotics found in locked bin in basement insufficient where defendant did not live on premises and where state did not show that tenants of premises did not have access to the bin).

The defendant's final claim is that the state did not produce sufficient evidence to prove beyond a reasonable doubt that she possessed the items knowing they were probably stolen. We disagree. "To convict a defendant of the crime of receiving stolen goods, it is necessary for the state to prove beyond a reasonable doubt that he had actual knowledge that the goods were stolen when he received them. *State* v. *Pambianchi,* 139 Conn. 543, 546, 95 A.2d 695 [1953]; *State* v. *Newman,* 127 Conn. 398, 400, 17 A.2d 774 [1940]. Ordinarily, guilty knowledge can be established only through an inference from other proved facts and circumstances. The inference may be drawn if the circumstances are such that a reasonable man of honest intentions, in the situation of the defendant, would have concluded that the property was stolen." *State* v. *Fredericks,* 149 Conn. 121, 124, 176 A.2d 581 (1961). Given the quantity, diversity, and condition of the consumer goods, jewelry and clothing present in the home, a reasonable man of honest intentions would have concluded that the items were stolen. The jury, therefore, could infer that the defendant had the requisite actual knowledge that the goods were probably stolen. Additionally, we note that possession of recently stolen property "raises

6 Conn. App. 24, 32, 502 A.2d 945 (1986). Here, however, we do not need to review the sufficiency of the evidence as to the defendant's possession of the items seized from the attic since we have already determined that they should have been suppressed and even without those items there was sufficient evidence that the value of the property exceeded $1000.

a permissible inference of criminal connection with the property, and if no explanation is forthcoming, the inference of criminal connection may be as a principal in the theft, or as a receiver under the receiving statute, depending upon the other facts and circumstances which may be proven." *State* v. *Palkimas,* 153 Conn. 555, 559, 219 A.2d 220 (1966). The trial court did not err in denying the defendant's motion for judgment of acquittal.

There is no error.

In this opinion the other judges concurred.