MARK L. BOVA, SR. *v.* COMMISSIONER OF
CORRECTION
(AC 25892)

Flynn, C. J., and Gruendel and Foti, Js.

Argued February 16—officially released April 25, 2006

*Auden Grogins*, special public defender, for the appellant (petitioner).

*James M. Ralls*, assistant state's attorney, with whom, on the brief, were *Angela R. Macchiarulo*, assistant state's attorney, and *Carolyn K. Longstreth*, former senior assistant state's attorney, for the appellee (respondent).

*Opinion*

GRUENDEL, J. The petitioner, Mark L. Bova, Sr., appeals, following the granting of his petition for certification to appeal, from the habeas court's judgment dismissing his second amended petition for a writ of habeas corpus.[1] On appeal, the petitioner claims that the court improperly concluded that he failed to prove that he was denied the effective assistance of counsel

---

[1] The petitioner was convicted, following a jury trial, of the murder of his wife in violation of General Statutes § 53a-54a (a), and conspiracy to commit murder in violation of General Statutes §§ 53a-54 (a) and 53a-48 (a). He was sentenced on February 21, 1995, to a total effective term of sixty years incarceration. The conviction subsequently was upheld on direct appeal in *State* v. *Bova*, 240 Conn. 210, 690 A.2d 1370 (1997).

at his criminal trial or that he was prejudiced by the alleged deficiency. We affirm the judgment of the habeas court.

The petitioner's claim arises from the conduct of his counsel, John R. Williams, during the testimony of Diane Donofrio, a witness for the prosecution. On November 14, 1994, during direct examination, Donofrio testified about her prior relationship with the petitioner,[2] her contact with the police about her knowledge of the petitioner's murder of his wife and Donofrio's actual participation in the crime.[3] In connection with her involvement in the crime, Donofrio further testified on direct examination that she was charged with aiding and abetting murder and conspiracy to commit murder. During cross-examination, Williams elicited testimony from Donofrio about the potential length of the sentences that she could receive if convicted of either of the charged offenses. He then elicited testimony from Donofrio that, despite these charges, she was released on a $100,000 nonsurety bond and was able to go home

[2] On direct appeal, our Supreme Court concluded that the jury reasonably could have found that during the investigation of the murder of the petitioner's wife, the petitioner told the police about an extramarital affair he had engaged in with Donofrio beginning in 1985. State v. Bova, 240 Conn. 210, 215, 690 A.2d 1370 (1997). In May, 1993, the petitioner terminated his relationship with Donofrio and moved in with another woman. Id., 216. Two months later, Donofrio contacted the West Haven police department to report that the petitioner had killed the victim. Id. At that time, she explained that he had "told [her] that he loved her and could not afford a divorce, that he intended to kill the victim by strangulation, and that he would commit the murder on a Tuesday because he did not work on Wednesday." Id.

[3] Our Supreme Court further concluded that the jury reasonably could have found that after the petitioner contacted Donofrio, informing her that he was in the process of committing the murder, Donofrio went to the petitioner's home and witnessed him strangling the victim. State v. Bova, 240 Conn. 210, 216, 690 A.2d 1370 (1997). While there, Donofrio took turns with the petitioner suffocating the victim until she had no pulse. Id. Donofrio then drove to a designated point and met with the petitioner, who had disposed of the victim's body. Id., 216–17. Donofrio later disposed of items used in the crime and the victim's pocketbook. Id.

that evening. Testimony for the day concluded shortly thereafter.

The following day, November 15, 1994, the court informed counsel for both parties, outside the presence of the jury and Donofrio, that it had received an unsigned note from the jury stating: "What is a non-surety bond? We're confused as to what this means." Thereafter, Williams recommended that the court answer the question, but because the question "sort of suggests that they're deliberating," he also recommended that the court reinstruct the jury not to talk about the case. The prosecutor disagreed, stating that the state did not think the question should be answered because it would encourage deliberation and it was not evidence. The state, however, agreed that the jury should be reinstructed that it should not yet deliberate. Because counsel for both parties did not agree that the court should answer the jury's question, the court declined to do so.[4] After Donofrio and the jury returned

[4] The colloquy between the court and counsel was as follows:

"The Court: While the jury is out, there's a question. Somebody is—no one is named in the question, but I assume it's a general jury question. It reads, 'What is a nonsurety bond? We're confused as to what this means.' All I can tell them at this point, is [that] they have to deal with what the evidence is unless you people want me to give them some instruction as to what a nonsurety bond is.

"[The Petitioner's Counsel]: I think, Your Honor, it would be appropriate to instruct them on what a nonsurety bond is, since they've asked. I also think, however, that the question raises another interesting question, one that was touched upon [in *State* v. *Carter*, 34 Conn. App. 58, 91, 640 A.2d 610 (1994), rev'd on other grounds, 232 Conn. 537, 656 A.2d 657 (1995)]. And that is, the question sort of suggests that they're deliberating, and perhaps there should be reinstruction, you know, not to be talking about the case. I think they should—the question should be answered, but I think they should also be told that they should not be deliberating.

"[The Prosecutor]: I disagree, Your Honor. I don't think the question should be answered. I think that would encourage deliberation at this point, and it's not evidence. I think the court made the appropriate rulings yesterday, and they should just be instructed that they shouldn't be deliberating at this point and that the question cannot be answered.

"The Court: Well, unless there was agreement by the parties that I instruct on it, I'm not going to instruct on it then and [will] tell them they just have to be guided by the evidence that they hear."

to the courtroom, the court informed the jury that it could not add evidence to the case by answering their question. The court then continued to remind the jury that it should not begin deliberating until the end of the trial.[5] Thereafter, Williams continued with cross-examination of Donofrio.

Following the conclusion of trial, the petitioner was convicted of the charged offenses and sentenced. On March 9, 1999, the petitioner filed a second amended petition for a writ of habeas corpus, alleging ineffective assistance of trial counsel. Specifically, the petitioner claimed that Williams "failed to adequately protect [the] petitioner's right to an impartial jury" and that he "failed to adequately protect [the] petitioner's trial rights when it became apparent the jury was deliberating before the close of all evidence."[6] The habeas claim was tried to the court on July 21, 2004. At the hearing, neither the petitioner nor the respondent offered any testimony. Instead, the petitioner rested on documents he previously had submitted to the court, including transcripts, pleadings and supplemental legal research.[7] The

[5] The court's statement to the jury was: "[B]efore we proceed with the cross-examination, I did deal with counsel on the question that was raised, and I will read that into the record. There was a note, unsigned. It reads as follows: 'What is a nonsurety bond? We're confused as to what this means.' I have marked that as a court exhibit, and my answer simply is, unfortunately, I cannot add evidence in a case or define terms that this— The evidence is presented here by the lawyers, and I can't get involved in that, and the only other thing I would say, and I don't want to—I'm saying this out of an abundance of caution, and this is, I indicated at the very beginning [that] you're not allowed to begin any kind of deliberations in the matter until the end, and I'm just cautioning you that you can't get—to the extent that you may have been doing that, you kind of can't do that until the end, okay? I'm sorry, that's as far as I can go with that question."

[6] The petitioner's habeas claim first came before the court for a hearing on a motion for summary judgment on April 25, 2004; however, the court declined to make a decision at that hearing. A mistrial was declared on July 21, 2004.

[7] On April 16, 2004, the petitioner submitted the relevant trial transcript from November 15, 1994, the decision of our Supreme Court on his direct appeal; see *State* v. *Bova*, 240 Conn. 210, 690 A.2d 1370 (1997); his entire

court dismissed the petition by memorandum of decision on September 1, 2004,[8] and on September 13, 2004, granted the petitioner certification to appeal.

"Our standard of review of a habeas court's judgment on ineffective assistance of counsel claims is well settled. In a habeas appeal, this court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous, but our review of whether the facts as found by the habeas court constituted a violation of the petitioner's constitutional right to effective assistance of counsel is plenary. . . .

"In *Strickland* v. *Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the United States Supreme Court enunciated the two requirements that must be met before a petitioner is entitled to reversal of a conviction due to ineffective assistance of counsel. First, the [petitioner] must show that counsel's performance was deficient. . . . Second, the [petitioner] must show that the deficient performance prejudiced the defense. . . . Unless a [petitioner] makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversarial process that renders the result unreliable." (Internal quotation marks omitted.) *Santiago* v. *Commissioner of Correction*, 90 Conn. App. 420, 424–25, 876 A.2d 1277, cert.

criminal trial and sentencing transcript, and the sentencing transcript from Donofrio's criminal trial. On April 25, 2002, the petitioner submitted the remarks of the trial judge from Donofrio's sentencing transcript and copies of the decisions of this court, our Supreme Court and the United States Supreme Court in *State* v. *Hobson*, 8 Conn. App. 13, 511 A.2d 348, cert. denied, 201 Conn. 808, 515 A.2d 379 (1986), cert. denied, 480 U.S. 917, 107 S. Ct. 1370, 94 L. Ed. 2d 686 (1987). On July 24, 2002, the habeas court also noted that it was aware of the briefs and argument made on April 25, 2002, in the hearing on the motion for summary judgment on the habeas claim. See footnote 6. The petitioner rested on those materials as well.

[8] The court found that the petitioner had failed to show either that he had received ineffective assistance of counsel or that he had been prejudiced by the alleged deficiency.

denied, 275 Conn. 930, 883 A.2d 1246 (2005), cert. denied sub nom. *Santiago* v. *Lantz*, 547 U.S. 1007, 126 S. Ct. 1472, 164 L. Ed. 2d 254 (2006).

"The first part of the *Strickland* analysis requires the petitioner to establish that . . . counsel's representation fell below an objective standard of reasonableness considering all of the circumstances. . . . [A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." (Internal quotation marks omitted.) *Smith* v. *Commissioner of Correction*, 89 Conn. App. 134, 139, 871 A.2d 1103, cert. denied, 275 Conn. 909, 882 A.2d 676 (2005).

"Turning to the prejudice component of the *Strickland* test, [i]t is not enough for the [petitioner] to show that the errors [made by counsel] had some conceivable effect on the outcome of the proceeding. . . . Rather, [the petitioner] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. . . . When a [petitioner] challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." (Internal quotation marks omitted.) *Lewis* v. *Commissioner of Correction*, 89 Conn. App. 850, 856, 877 A.2d 11, cert. denied, 275 Conn. 905, 882 A.2d 672 (2005).

The petitioner claims that he should prevail on both prongs of the *Strickland* analysis. As to the first prong, he argues that Williams' performance was ineffective because he did not request an evidentiary hearing into alleged premature jury deliberations. We conclude that the petitioner has not demonstrated that Williams' per-

formance was deficient and, therefore, we do not reach the second prong, which is whether his defense was prejudiced by the alleged deficiency.

In order to examine Williams' conduct under the circumstances, we begin by examining the law of premature juror deliberations. "It is undisputed that presubmission discussion of the evidence by jurors in any degree is not an acceptable practice and constitutes misconduct."[9] *State* v. *Newsome*, 238 Conn. 588, 630, 682 A.2d 972 (1996). "Deliberation in this sense, however, means articulating and exchanging views, albeit preliminary, with one's fellow jurors. . . . It does not mean the absence of thought, however preliminary. We cannot expect jurors to be totally passive receptors of information who are not permitted even to think about what they have heard. A rule that rests on such a futile requirement . . . would be a rule without foundation in reality. The trial court is expected to prevent premature deliberation, not harness the human mind." (Citation omitted; internal quotation marks omitted.) *Spitzer* v. *Haims & Co.*, 217 Conn. 532, 545, 587 A.2d 105 (1991).

A finding of juror discussion prior to summation, therefore, does not automatically mean that the defendant is entitled to a new trial. See *State* v. *Washington*, 182 Conn. 419, 429, 438 A.2d 1144 (1980). In *State* v. *Castonguay*, 194 Conn. 416, 436, 481 A.2d 56 (1984), our Supreme Court determined that the proper remedy in cases of premature jury deliberation is an evidentiary hearing to determine whether the defendant has been prejudiced by the juror misconduct. "[I]n cases where

---

[9] When the court expressly has instructed the jurors that they may discuss the case among themselves, such error is of constitutional magnitude. *State* v. *Washington*, 182 Conn. 419, 429, 438 A.2d 1144 (1980). "[W]here . . . there has been no authorization [by the trial court of presubmission discussion of the evidence] a discussion among jurors prior to the trial charge has been held not to be fatal." (Internal quotation marks omitted.) *State* v. *Newsome*, 238 Conn. 588, 629–30, 682 A.2d 972 (1996).

the trial court is directly implicated in juror misconduct, the state bears the burden of proving that misconduct was harmless error. . . . Where, however, the trial court was in no way responsible for the juror misconduct [our Supreme Court has] repeatedly held that a defendant who offers proof of juror misconduct bears the burden of proving that actual prejudice resulted from that misconduct."[10] (Citations omitted; internal quotation marks omitted.) *State* v. *Newsome*, supra, 238 Conn. 628.

With the relative burdens of proving prejudice from premature jury deliberations in mind, we turn to the petitioner's claim that Williams' performance was deficient because he did not request an evidentiary hearing. "In our review, we strongly presume that counsel's professional assistance was reasonable, and the petitioner has the burden to overcome the presumption that his attorney was employing sound trial strategy. . . . We evaluate the conduct from trial counsel's perspective at the time. . . . [C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional

---

[10] The petitioner argues that here, as in *Castonguay*, the burden of proving harmlessness would fall on the state if an evidentiary hearing were held. The petitioner further argues that he suffered prejudice as a result of Williams' failure to request a hearing because the state would be unable to meet its burden of showing harmlessness. Although we need not reach whether the petitioner was prejudiced by his counsel's allegedly deficient performance, we note that the petitioner was not prejudiced in this manner. The court in *Castonguay* noted that there is a "critical difference" in cases in which the trial court expressly has authorized the deliberations. *State* v. *Castonguay*, supra, 194 Conn. 435 n.19. "Where a trial court does not authorize the jury to deliberate prematurely, a finding of error is not automatic. In such circumstances, [t]he test is whether or not the misconduct has prejudiced the defendant to the extent that he has not received a fair trial." (Internal quotation marks omitted.) *State* v. *Hobson*, 8 Conn. App. 13, 23, 511 A.2d 348, cert. denied, 201 Conn. 808, 515 A.2d 379 (1986), cert. denied, 480 U.S. 917, 107 S. Ct. 1370, 94 L. Ed. 2d 686 (1987). The defendant bears the burden of proving that actual prejudice resulted. *State* v. *Newsome*, supra, 238 Conn. 628.

judgment." (Citations omitted; internal quotation marks omitted.) *Ziel* v. *Commissioner of Correction*, 89 Conn. App. 371, 376, 873 A.2d 239, cert. denied, 275 Conn. 920, 883 A.2d 1254 (2005).

We conclude that the petitioner has failed to meet his burden of showing that Williams' performance was deficient and not reasonable trial strategy. Williams clearly identified a potential problem with premature deliberation. Recognizing the potential, he then took action to remedy it, asking the court to reinstruct the jury on its duty not to engage in premature deliberation. After the court made the requested instruction, Williams continued to cross-examine the witness on the non-surety bond and the favorable treatment she may have received in exchange for her testimony. Williams, therefore, had ample opportunity to elicit evidence from which the jury could have discredited Donofrio's testimony. In the scope of his overall efforts to impeach Donofrio's credibility, Williams reasonably may have made the tactical decision that it was better not to embarrass or to distract the jury during his examination of the witness by forcing an evidentiary hearing. In light of the high burden placed on the petitioner to demonstrate that the jury's question prejudiced his right to a fair trial, such conduct falls within the bounds of reasonable trial strategy. Cf. id., 378 (reasonable trial strategy not to exercise peremptory challenge on jurors from potentially tainted panel where counsel conducted extensive voir dire and determined jurors would be fair and impartial); *Bond* v. *Commissioner of Correction*, 87 Conn. App. 50, 56, 863 A.2d 757 (2004) (reasonable trial strategy not to object to jury taking map into jury room before summation where court instructed jury it could look casually at map and previously had instructed jury not to discuss evidence), cert. denied, 273 Conn. 912, 870 A.2d 1079 (2005). The petitioner, therefore, has not overcome the presumption that Wil-

liams was exercising reasonable professional judgment and cannot meet the first prong of *Strickland*.

The judgment is affirmed.

In this opinion the other judges concurred.