******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

MARK BOVA *v.* COMMISSIONER OF CORRECTION
(AC 36915)

Lavine, Mullins and Schaller, Js.

*Argued October 8, 2015—officially released January 12, 2016*

(Appeal from Superior Court, judicial district of
Tolland, Kwak, J.)

*Peter Tsimbidaros*, for the appellant (petitioner).

*Melissa L. Streeto*, senior assistant state's attorney,
with whom, on the brief, were *Kevin D. Lawlor*, state's
attorney, *Michael Proto*, assistant state's attorney, and
*Steven M. Lesko*, deputy assistant state's attorney, for
the appellee (respondent).

*Opinion*

SCHALLER, J. The petitioner, Mark Bova, appeals after the second habeas court granted his petition for certification to appeal from the court's judgment denying his second amended petition for a writ of habeas corpus. On appeal, he claims that the second habeas court improperly concluded that he had not been denied effective assistance of counsel when his first habeas counsel failed to adequately pursue claims pertaining to the failure of this trial and appellate counsel, John R. Williams, (1) to request a new trial based on or to raise on appeal the trial court's inconsistent application of the dual intent requirement in the law of conspiracy; (2) to investigate and then produce an adequate basis to impeach a witness regarding her bias and motive; and (3) to object adequately to instances of prosecutorial impropriety during closing argument. We affirm the judgment of the second habeas court.

The petitioner was convicted after a jury trial of murder in violation of General Statutes § 53a-54a (a) and conspiracy to commit murder in violation of General Statutes §§ 53a-54a (a) and 53a-48 (a). The trial court, *Gormley, J.*, sentenced him to concurrent prison terms of sixty years on the murder count and twenty years on the conspiracy count. On direct appeal in *State* v. *Bova*, 240 Conn. 210, 213–15, 690 A.2d 1370 (1997), our Supreme Court concluded that the jury reasonably could have found the following facts.

On January 29, 1992, the petitioner reported his wife, Susan Bova, missing. Id., 213–14. The West Haven Police Department discovered her body shortly thereafter and commenced an investigation of her death. Id., 214. In the course of the investigation, the petitioner revealed that he had been engaged in an extramarital affair with Diane Donofrio since 1985. Id., 215. In May, 1993, the petitioner terminated his relationship with Donofrio. Id., 216. Two months later, Donofrio reported that the petitioner had killed the victim on January 28, 1992. Id., 216. The petitioner was arrested and charged with murder and conspiracy to commit murder.

Donofrio testified at the petitioner's criminal trial that the petitioner told her he intended to kill the victim, then called her on Tuesday, January 28, 1992, while he was in the process of doing so, asking for her assistance. Id., 216. Donofrio went to the petitioner's house. Id. She found him strangling the victim with a cord. Id. Because the victim still had a pulse, Donofrio and the petitioner took turns smothering her with a pillow until they could no longer detect any heartbeat. Id.

As previously stated, the petitioner was convicted of murder and conspiracy to commit murder. Donofrio pleaded guilty to conspiracy to commit murder and making a false statement to the police; she was sentenced, by the same trial judge, *Gormley, J.*, as the

petitioner, to ten years imprisonment, execution suspended after four years, and three years of probation for the conspiracy charge, and received an unconditional discharge on the false statement charge. On direct appeal our Supreme Court affirmed the judgment of the trial court.[1] Id., 213. On March 9, 1999, the petitioner filed his first habeas petition, citing grounds different from those in the present appeal,[2] and was represented by a different attorney (first habeas counsel) from Williams or from his present attorney.[3] The habeas court dismissed the petition, and this court affirmed the judgment of dismissal. *Bova* v. *Commissioner of Correction*, 95 Conn. App. 129, 130–31, 894 A.2d 1067, cert. denied, 278 Conn. 920, 901 A.2d 43 (2006).

The petitioner filed a second habeas petition, which he amended on April 9, 2013. Following a trial (second habeas trial) at which the petitioner testified and submitted documentary evidence, the habeas court, *Kwak, J.* (second habeas court), first granted the motion for summary judgment filed by the respondent, the Commissioner of Correction, on three of the four counts, then denied the petition regarding the remaining count by written memorandum of decision on March 14, 2014. The second habeas court subsequently granted the petitioner's petition for certification to appeal.[4] The present appeal followed.

The standard of review pertaining to claims of ineffective assistance of counsel is well settled. "The habeas court is afforded broad discretion in making its factual findings, and those findings will not be disturbed unless they are clearly erroneous. . . . Historical facts constitute a recital of external events and the credibility of their narrators. . . . Accordingly, [t]he habeas judge, as the trier of facts, is the sole arbiter of the credibility of witnesses and the weight to be given to their testimony. . . . The application of the habeas court's factual findings to the pertinent legal standard, however, presents a mixed question of law and fact, which is subject to plenary review." (Citations omitted; internal quotation marks omitted.) *Anderson* v. *Commissioner of Correction*, 313 Conn. 360, 375, 98 A.3d 23 (2014), cert. denied sub nom. *Anderson* v. *Semple*, U.S. , 135 S. Ct. 1453, 191 L. Ed. 2d 403 (2015).

"[I]t is well established that [a] criminal defendant is constitutionally entitled to adequate and effective assistance of counsel at all critical stages of criminal proceedings." (Internal quotation marks omitted.) Id. "[A] claim of ineffective assistance of counsel consists of two components: a performance prong and a prejudice prong. To satisfy the performance prong . . . the petitioner must demonstrate that his attorney's representation was not reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law. . . . To satisfy the prejudice prong, [the petitioner] must

demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. . . . A reasonable probability is a probability sufficient to undermine confidence in the outcome." (Citation omitted; internal quotation marks omitted.) *Lapointe* v. *Commissioner of Correction*, 316 Conn. 225, 264–65, 112 A.3d 1 (2015). "Because both prongs of [*Strickland* v. *Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)] must be demonstrated for the petitioner to prevail, failure to prove either prong is fatal to an ineffective assistance claim." *Jefferson* v. *Commissioner of Correction*, 144 Conn. App. 767, 773, 73 A.3d 840, cert. denied, 310 Conn. 929, 78 A.3d 856 (2013). When raising a subsequent habeas petition, "the petitioner must establish that both prior habeas counsel and trial counsel were ineffective." *Alterisi* v. *Commissioner of Correction*, 145 Conn. App. 218, 227, 77 A.3d 748, cert. denied, 310 Conn. 933, 78 A.3d 859 (2013).

I

The petitioner claims that his first habeas counsel failed to pursue claims pertaining to the failure of Williams either to request a new trial or to appeal on the basis of the trial court's inconsistent application of the dual intent requirement in the law of conspiracy, which requires an agreement between coconspirators. The petitioner claims that this inconsistency is evident in argument on two successive days of the petitioner's criminal trial, and in Donofrio's sentencing transcript. The petitioner asserts that media coverage of the trial motivated the trial court to change course. He asserts that the trial court concluded there was no evidence of a conspiracy on November 28, 1994, then, despite this finding and after reading and hearing the media speculation, denied his motion for a judgment of acquittal on November 29, 1994, and then again found, when sentencing Donofrio, that there was no evidence of a conspiracy. The respondent replies, first, that collateral estoppel bars this argument because the sufficiency of the evidence for conspiracy was raised on direct appeal, and second, that the petitioner failed to provide evidence at the second habeas trial that his first habeas counsel was ineffective.

The following additional facts are relevant to our resolution of the petitioner's first claim. During the criminal trial on November 28, 1994, Williams moved for a judgment of acquittal on the second count, conspiracy to commit murder, on the ground that there was no evidence of a meeting of the minds between Donofrio and the petitioner. In considering the motion, the trial court reviewed the evidence, principally Donofrio's testimony on direct examination, and indicated it did not see evidence of an agreement, a necessary element of the crime. The state then focused the court's attention on Donofrio's testimony that she suffocated the victim

after the petitioner handed her the pillow; the court queried whether Donofrio's testimony or the testimony of Wayne Carver, the medical examiner, indicated that the victim was alive when Donofrio placed the pillow over her face. Judge Gormley concluded by telling the state: "I'll give you until tomorrow morning to deal with this, but I can tell you I've gone over this transcript with a fine tooth comb looking for exactly what you've said I should be looking for before I remove the issue from the jury and I don't find any evidence, and I recognize I'm not looking for proof beyond a reasonable—I don't see any evidence, express or implied, explicit or implicit, as of my reading of this, to evidence that this kind of agreement was entertained by Ms. Donofrio and without her there cannot be a conspiracy . . . ."

At trial the following day, November 29, 1994, the state again argued that there was sufficient evidence that Donofrio had entered into an agreement with the petitioner to murder the victim for the court to submit the conspiracy count to the jury. In support of its argument, the state filed a brief and presented the court with various sections of the transcript of Donofrio's cross-examination by Williams, which the court indicated it had not seen. One exchange in the transcript, between Williams and Donofrio, provided as follows:

"Q. [I]t's your claim that Mark Bova was on the other end of the line and he told you that he was right in the middle of committing the murder. Is that right?

"A. Yes.

"Q. And it's your claim that he told you he wanted you to come right over and help him do it. Is that right?

"A. Yes.

"Q. And you said sure, I'll be right there. Is that right?

"A. I don't know exactly what I said.

"Q. Or something to that effect."

"A. Yes."

Another exchange, again between Williams and Donofrio, provided:

"Q. Oh. Okay. All right. You're just claiming that your role was to use the pillow, is that right?

"A. Yes."

Following a discussion of the law of conspiracy to commit murder, the court commented: "I'm going to read this because you've pointed out some new areas or some areas where there may be sufficient evidence to allow this to go to the jury . . . ." Still later, the court noted that "I have both listened to myself being quoted by others on the radio and what I'm supposed to have said in newspaper accounts of this thing. They, they, as often is the case, they come off somewhat differently than what the court is actually dealing with."

The trial court reiterated that it would read the transcript it had just been given and continue to consider the issue, after it let Williams present his argument.

Thereafter, the trial court denied the petitioner's motion for a judgment of acquittal. In doing so, it reviewed Carver's testimony, concluding that his testimony allowed for the possibility that the victim was alive when Donofrio arrived at the house, and it reviewed Donofrio's testimony, finding several instances that indicated a conspiracy, drawing special attention to her testimony that the petitioner asked for help when he was "in the process" of murdering the victim.

In a separate proceeding, Donofrio pleaded guilty to conspiracy to commit murder and making a false statement to the police. *State* v. *Bova*, supra, 240 Conn. 217 n.3. At her sentencing, Judge Gormley considered a statement from the victim's family, a statement by Donofrio's brother, and several letters. The trial court noted Donofrio's cooperation in the prosecution of the petitioner, and made its own observations regarding her demeanor and her veracity while testifying. In the course of its extensive remarks, it commented: "Again, in the court's mind, there is no way I could conclude one way or the other whether or not there was still life in Mrs. Bova at [the time when Donofrio arrived at the house]. More than likely there was not." It also noted that in pleading guilty, "she has also chosen not to force the state to prove a conspiracy case which would at least have been, in the court's mind, difficult, not impossible but difficult." She was sentenced to ten years imprisonment, execution suspended after four years, and three years of probation for the conspiracy charge, and received an unconditional discharge on the false statement charge.

At the second habeas trial, the petitioner testified regarding the media attention generated by the case, specifically media speculation that the court was about to grant the motion for acquittal based on the judge's statements on November 28, 1994. The petitioner also submitted a newspaper article published on the morning of November 29, 1994. The article asserts that the trial court was leaning toward granting the motion for a judgment of acquittal. The article quotes several attorneys who opine on the effect of an acquittal on the conspiracy charge.[5] The second habeas court found that the petitioner had failed to meet his burden of proving ineffective assistance of counsel according to both *Strickland* prongs.

The petitioner has failed to prove that he was prejudiced by Williams' failure to raise the issue of any discrepancy among the trial court's statements regarding the existence of a conspiracy; therefore we decline to reach the first *Strickland* prong or the collateral estoppel argument.[6] See *Jefferson* v. *Commissioner of Cor-*

*rection*, supra, 144 Conn. App. 773. Our review of the record demonstrates that the trial court commented on the evidence in a thorough and thoughtful manner prior to ruling; it did not make inconsistent rulings. The evidence and argument presented on November 29, 1994, rather than the media speculation, provided the basis for the trial court's decision to deny the motion for a judgment of acquittal. The trial court's leniency in sentencing Donofrio was supported by a host of factors, and the trial court specifically stated that a conspiracy case against Donofrio would not have been impossible for the state to win. Nothing presented at the second habeas trial rebuts this. The second habeas court properly found that the petitioner was not prejudiced by first habeas counsel's failure to raise the issue of Williams' failure to argue that the trial court applied inconsistent standards either in a motion for a new trial or in the direct appeal.

## II

The petitioner claims that the second habeas court erred in finding that the petitioner's first habeas counsel did not fail to pursue adequately claims pertaining to Williams' failures to investigate and then produce an adequate basis to impeach Donofrio. He asserts that Williams should have pursued the theory that Donofrio had been stalking the petitioner and his fiancée, Lisa Sheldon, prior to and during the trial, and that this would show Donofrio's bias and motive. The respondent argues that this issue, again, is barred by collateral estoppel,[7] or, alternatively, that the petitioner failed to demonstrate that his first habeas counsel and Williams were ineffective.

The following additional facts are relevant to our resolution of this claim. On direct examination during the criminal trial, Donofrio testified that within one and one-half years of the murder, the petitioner was with another woman, Lisa Sheldon, and that after learning this, Donofrio contacted the police. Donofrio testified that she had not told the full truth in statements to the police and in her testimony at the probable cause hearing on September 30, 1993. She initially left out her own involvement in the crime completely, but steadily divulged further information regarding her role as the investigation progressed. She eventually divulged, a month before trial, that she felt for the victim's pulse and smothered her with a pillow. She testified that she was charged with conspiracy to commit murder and aiding and abetting murder.

On cross-examination during the criminal trial, Williams elicited further testimony from Donofrio regarding specific instances when she had lied to the police and had lied in court at a pretrial hearing regarding her own role in the murder and other details about her relationship with the petitioner. She testified that she had written the victim a letter describing her affair with

the petitioner in order to upset the victim and destroy the victim's marriage to the petitioner. Most importantly, she testified that she hated the petitioner and wanted to destroy him.

While cross-examining Donofrio at the criminal trial on November 15, 1994, Williams also asked why she had been near the petitioner's residence the previous morning. The state objected on relevancy grounds, the court excused the jury, and Williams continued to question Donofrio outside the presence of the jury. Donofrio denied being near the petitioner's residence on the morning of November 14, 1994, and denied being near Sheldon's residence over the Memorial Day holiday of 1994. The trial court did not allow Williams to continue the line of questioning.

At the second habeas trial, the petitioner testified that he had seen Donofrio behind Sheldon's house over the Memorial Day weekend in 1994, that Sheldon had seen Donofrio driving next to her during the trial, and that Donofrio had moved from Derby to Naugatuck to be closer to the petitioner. He also testified that Williams could have interviewed Sheldon or hired a private investigator to uncover more information regarding Donofrio's alleged stalking behavior. The second habeas court found that the petitioner had failed to meet his burden of proving ineffective assistance of counsel according to both *Strickland* prongs.

We agree with the habeas court that the petitioner failed to demonstrate that he was prejudiced by Williams' failure to pursue the stalking theory further and do not reach the respondent's other arguments. See *Jefferson* v. *Commissioner of Correction*, supra, 144 Conn. App. 773. We are unable to conclude what evidence of stalking behavior the petitioner could have elicited due to the petitioner's failure to call Sheldon, Donofrio, trial counsel, or first habeas counsel at the second habeas trial. Moreover, our review of the record reveals that Williams had elicited numerous examples of Donofrio's inconsistent statements and of her animosity toward the victim and the petitioner. There was significant support for the second habeas court's determination that the petitioner failed to prove there was a reasonable possibility that had his first habeas counsel raised Williams' failure to pursue the stalking theory, the result of the proceeding would have been different.

### III

The petitioner next claims that his first habeas counsel failed to pursue adequately claims pertaining to Williams' failures to object adequately to instances of prosecutorial impropriety during closing argument. He claimed that because Williams did not object to statements made by the prosecutor until after the luncheon recess, the trial court denied Williams' objection "as untimely thereby allowing the comments to fester." The

respondent replies that this claim is also controlled by the Supreme Court's determination that the comments were not improper.[8] In the alternative, the respondent asserts that neither the first habeas counsel nor Williams was ineffective.

The following additional facts are relevant to our consideration of this issue. At the petitioner's criminal trial, the prosecutor argued at the conclusion of her closing argument: "This is the husband of the week, father of the year, best man, best friend of the decade. This is the person with the motive, the opportunity and the method. This is the man who has greed and has lust. And, ladies and gentlemen of the jury, this is a crime about greed and about lust on both their parts. But for you, twelve men and women firm and true, with a great responsibility, this is a case about justice. Thank you." The court excused the jury for lunch. Following the luncheon recess, Williams argued that the language used by the prosecutor and the manner in which she delivered the closing (gesturing at the petitioner) were unacceptable and that the court should instruct the jury to disregard those portions of the closing argument. In response, the prosecutor claimed that Williams' failure to object immediately demonstrated that those remarks were not improper. The court ruled: "It would not be the court's intention to either comment on or strike the language within the argument."

At the second habeas trial, the petitioner testified that during the luncheon recess, following the prosecutor's comments, he asked Williams whether the prosecutor was permitted to point her finger at him and make statements such as "father of the year" and "husband of the decade" about him. The petitioner further testified that, following this conversation, Williams objected to the prosecutor's comments, but the trial court refused to comment to the jury.

Again, we agree that the petitioner has failed to prove prejudice pursuant to *Strickland*. See *Lapointe* v. *Commissioner of Correction*, supra, 316 Conn. 264–65. We need not reach the respondent's other arguments. See *Jefferson* v. *Commissioner of Correction*, supra, 144 Conn. App. 773. Pursuant to *State* v. *Stevenson*, 269 Conn. 563, 576, 849 A.2d 626 (2004), when analyzing a claim of prosecutorial impropriety, "the fact that defense counsel did not object to one or more incidents of [impropriety] must be considered in determining whether and to what extent the [impropriety] contributed to depriving the defendant of a fair trial . . . ." See also *State* v. *Williams*, 204 Conn. 523, 540, 529 A.2d 653 (1987) (factors for determining prosecutorial impropriety). The petitioner cites to *State* v. *Ceballos*, 266 Conn. 364, 832 A.2d 14 (2003): "We emphasize the responsibility of defense counsel, at the very least, to object to perceived prosecutorial improprieties as they occur *at trial* . . . . Accordingly, we emphasize that

counsel's failure to object *at trial*, while not by itself fatal to a defendant's claim, frequently will indicate on appellate review the magnitude of the constitutional error . . . ." (Citations omitted; emphasis altered.) Id., 414. This statement by our Supreme Court is clearly distinguishable; here, Williams did object at trial; he merely did so following the luncheon recess. The trial court did not rule that the objection was too late or that, because Williams had not objected earlier, it discounted the merits of the objection. It ruled that it would not comment on or strike the language and did not further elucidate its reasoning. Our Supreme Court upheld this decision on direct appeal, with reference to *State* v. *Williams*, supra, 204 Conn. 523, among other cases, and without any mention of Williams' failure to object before the luncheon recess. *State* v. *Bova*, supra, 240 Conn. 244–45. Our only task, then, is to determine whether the petitioner was prejudiced because Williams objected after lunch rather than before lunch. We see no evidence in the trial transcript or the second habeas trial transcript suggesting that the court would have ruled differently prior to lunch. We find that the petitioner has failed to meet his burden of showing he was prejudiced by the first habeas counsel's failure to raise the issue of Williams' failure to object the moment the prosecutor finished her closing argument.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The petitioner claimed on direct appeal that the trial court "improperly: (1) restricted his cross-examination of several witnesses in violation of his right to confront his accusers as guaranteed by the sixth amendment to the United States constitution; (2) denied his motion to suppress incriminating evidence seized from his home pursuant to a search warrant issued in violation of the fourth amendment to the United States constitution; (3) precluded him from introducing certain evidence in violation of his right to present a defense as guaranteed by the sixth and fourteenth amendments to the United States constitution; (4) overruled his objections to certain allegedly inflammatory comments by the state during its closing argument, thereby depriving him of a fair trial; and (5) concluded that the evidence was sufficient to support the verdict of guilty of the crime of conspiracy to commit murder." *State* v. *Bova*, supra, 240 Conn. 213.

[2] In the first habeas case, the petitioner claimed that Williams failed to object when the jury asked a question regarding the meaning of a "nonsurety bond" during Donofrio's testimony. *Bova* v. *Commissioner*, 95 Conn. App. 129, 131–133, 894 A.2d 1067, cert. denied, 278 Conn. 920, 901 A.2d 43 (2006). The petitioner claimed that this demonstrated the jury was impermissibly deliberating prematurely, and that Williams was ineffective in failing to request an evidentiary hearing into the premature deliberations. Id., 135–36.

[3] The petitioner alleged in the amended petition in the present action that his attorneys for his first habeas action were Cynthia Barlow and George Cameron, but the petitioner stated at the habeas trial that they were Adele Patterson, Cynthia Barlow, and others.

[4] While the petition for certification to appeal lists the habeas court's granting of the motion for summary judgment as a ground, the petitioner's arguments on appeal all concern the count alleging ineffective assistance of first habeas counsel, which was the remaining count following the habeas court's granting of the motion for summary judgment.

[5] The petitioner claims that the attorneys quoted in the article expressed the opinion that acquitting as to one count would imply that the entire case, including the remaining charge of murder, was weak. While this accurately represents the opinions of some of the attorneys quoted, the article also contained opinions to the contrary: one attorney stated that acquitting as to one count "could cut both ways—either casting doubt on the prosecution's

entire case or implying that even though [the trial judge] felt there wasn't enough evidence of conspiracy, there was enough evidence that Bova committed the murder"; another stated that "the effect would be minimal."

[6] While we do not reach the issue of collateral estoppel, in *Diaz* v. *Commissioner of Correction*, 125 Conn. App. 57, 66, 6 A.3d 213 (2010), cert. denied, 299 Conn. 926, 11 A.3d 150 (2011), this court held that in order for a claim on direct appeal to have preclusive effect on a habeas action, the claims must be identical. "Although the habeas court was correct that the deficiency of counsel claim bears a striking similarity to the claim of impropriety by the court raised on direct appeal, this is a separate claim, thus requiring separate legal analysis." Id. Unlike in *Diaz*, in the present case, collateral estoppel was not the basis for the habeas court's decision on the issues appealed by the petitioner, although it was the basis for the court's grant of summary judgment on other counts of the petition.

[7] See footnote 6 of this opinion. On direct appeal, our Supreme Court held that "the [petitioner] had already elicited numerous admissions by Donofrio that clearly established her intense and abiding hostility toward him." *State* v. *Bova*, supra, 240 Conn. 226.

[8] See footnote 6 of this opinion. On direct appeal, our Supreme Court held: "In this case, the state's remarks regarding the defendant's lust and greed were fully supported by the evidence; indeed, the jury reasonably could have concluded that such lust and greed provided the defendant with sufficient motive to kill the victim. Although it may be argued that the state's ironic characterization of the defendant as a good husband and father was unnecessarily caustic, it cannot be said that the comments were without support in the record. The challenged remarks were relatively isolated and brief, they did not reflect a pattern of misconduct, and they did not implicate the fairness of the defendant's trial." *State* v. *Bova*, supra, 240 Conn. 244–45.