******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************************

## MARK BOVA *v.* COMMISSIONER OF CORRECTION
### (AC 43993)

Moll, Clark and Bear, Js.

*Syllabus*

The petitioner, who had previously been convicted of murder and conspiracy
to commit murder, filed an amended petition for habeas corpus, claim-
ing, inter alia, that the state failed to disclose exculpatory evidence or
to correct certain false and misleading testimony, in violation of his due
process rights. At the petitioner's criminal trial, D, a coconspirator,
testified as to how she and the petitioner were involved in the death of
the victim, and her testimony was corroborated by forensic evidence.
The habeas court rendered judgment dismissing in part and denying in
part the petitioner's claims, from which the petitioner, on the granting
of certification, appealed to this court. *Held* that the petitioner could
not prevail on his claim that the habeas court erred in failing to find
the existence of a cooperation agreement or understanding between D
and the state with respect to D's testimony: the petitioner's reliance on
*Gomez* v. *Commissioner of Correction* (336 Conn. 168) was misplaced
because, even assuming the veracity of the petitioner's allegations that
D was provided benefits in exchange for her cooperation, *Gomez* applies
only when a petitioner establishes the existence of an agreement
between the state and a witness and that the witness received some
benefit as a result of the agreement, and this court's review of the record
confirmed the habeas court's finding that the petitioner failed to prove
that the state had entered into an agreement or understanding with D;
moreover, with respect to the petitioner's due process claim, the habeas
court's finding that the petitioner had not proved that an agreement
or understanding existed between the state and D was supported by
substantial evidence.

Submitted on briefs January 26—officially released March 15, 2022

*Procedural History*

Amended petition for a writ of habeas corpus, brought
to the Superior Court in the judicial district of Tolland,
where the court, *Newson, J.*, dismissed in part the peti-
tion; thereafter, the case was tried to the court, *Seeley,
J.*; judgment dismissing in part and denying in part the
petition, from which the petitioner, on the granting of
certification, appealed to this court. *Affirmed.*

*J. Patten Brown III*, assigned counsel, for the appellant
(petitioner).

*Nancy L. Chupak*, senior assistant state's attorney,
with whom, on the brief, were *Margaret E. Kelley*, state's
attorney, and *Angela R. Macchiarulo* and *Michael Joseph
Proto*, senior assistant state's attorneys, for the appellee
(respondent).

*Opinion*

PER CURIAM. Following the granting by the habeas court of his petition for certification to appeal, the petitioner, Mark Bova, appeals from the judgment of the habeas court denying his third petition for a writ of habeas corpus. On appeal, the petitioner claims that the habeas court erred in failing to find the existence of a cooperation agreement or understanding between Diana Donofrio, a coconspirator, and the state with respect to Donofrio's testimony at the petitioner's criminal trial. We disagree with the petitioner's claim of error and, accordingly, affirm the judgment of the habeas court.

The following facts and procedural history are relevant to our resolution of the petitioner's appeal. After a jury trial, the petitioner was found guilty of the murder of his wife in violation of General Statutes § 53a-54a (a) and of conspiracy to commit murder in violation of General Statutes §§ 53a-48 (a) and 53a-54a (a). *State* v. *Bova*, 240 Conn. 210, 213, 690 A.2d 1370 (1997). At the petitioner's criminal trial, Donofrio testified as to how she and the petitioner were involved in the death of the petitioner's wife. Id., 216–17.[1] Donofrio's testimony was corroborated by forensic evidence presented at the trial. Id., 217–18. The petitioner appealed from the judgment of the trial court, which sentenced him to concurrent terms of sixty years of incarceration on the murder conviction and twenty years of incarceration on the conspiracy conviction. Id., 212–13. Our Supreme Court affirmed the judgment of the trial court. Id., 246.

On April 24, 2017, the petitioner filed his third petition for a writ of habeas corpus.[2] The petitioner subsequently amended his petition on August 16, 2018, and September 13, 2018. In the operative petition, the petitioner asserted claims of (1) judicial misconduct, (2) prosecutorial impropriety, (3) insufficient probable cause, and (4) the state's failure to disclose exculpatory evidence or to correct false and misleading testimony with respect to an informal agreement or understanding with Donofrio that, in return for her testimony against the petitioner, the state would provide her with various benefits, including pretrial release on a $100,000 nonsurety bond, a reduction in the severity of the charges against her, and no recommendation by the state concerning her sentence. On February 6, 2019, the habeas court dismissed the petitioner's claim of prosecutorial impropriety. On January 15, 2020, after a trial, the habeas court dismissed the petitioner's claims of judicial misconduct and insufficient probable cause. The habeas court also rendered judgment denying the habeas petition because the petitioner had failed to prove his claim that there was any agreement or understanding between the state and Donofrio for her testimony, and thus, the petitioner could not prove that the state had not disclosed exculpatory evidence to him, or failed to correct any false and misleading testimony by Donofrio about any agreement or understanding with the

state with respect to her testimony.

On January 28, 2020, the petitioner filed a petition for certification to appeal, which was granted by the habeas court. On appeal, the petitioner claims that the court erred in finding that no agreement or understanding existed between Donofrio and the state concerning her testimony.[3] Specifically, the petitioner claims that his due process rights were violated because Donofrio testified falsely that she had not entered into an agreement with the state, and the state failed to correct this false testimony. We disagree.

We begin by setting forth the applicable standard of review. "The existence of an undisclosed plea agreement is an issue of fact for the determination of the trial court. . . . Furthermore, the burden is on the [petitioner] to prove the existence of undisclosed exculpatory evidence. . . . A finding of fact will not be disturbed unless it is clearly erroneous in view of the evidence and pleadings on the whole record . . . . [W]hen a question of fact is essential to the outcome of a particular legal determination that implicates a defendant's constitutional rights, and the credibility of witnesses is not the primary issue, our customary deference to the trial court's factual findings is tempered by a scrupulous examination of the record to ascertain that the trial court's factual findings are supported by substantial evidence." (Citation omitted; internal quotation marks omitted.) *Greene* v. *Commissioner of Correction*, 330 Conn. 1, 29, 190 A.3d 851 (2018), cert. denied sub nom. *Greene* v. *Semple*,      U.S.     , 139 S. Ct. 1219, 203 L. Ed. 2d 238 (2019).

In the present case, the petitioner relies on the decision of our Supreme Court in *Gomez* v. *Commissioner of Correction*, 336 Conn. 168, 243 A.3d 1163 (2020). This reliance, however, is misplaced. In the consolidated criminal case in *Gomez*, the petitioner and his two codefendants were each charged, inter alia, with one count of murder and one count of conspiracy to commit murder. Id., 171. During their criminal trial, two other alleged coconspirators testified against the petitioner and his codefendants. Id., 171–72. In his habeas appeal, the petitioner in *Gomez* claimed that both of the alleged coconspirators "falsely testified at trial that (1) the state had not promised them anything in return for their cooperation, and (2) they did not receive any benefit at their respective bond hearings in exchange for cooperating." Id., 176. Our Supreme Court resolved this claim in favor of the petitioner after determining that "the prosecutor . . . had promised both [of the alleged coconspirators] that he would bring their cooperation to the attention of the sentencing court," and that they did, in fact, receive benefits in exchange for their cooperation that were not disclosed to the jury. Id.

In the present case, the petitioner argues that *Gomez* applies because "Donofrio was given three benefits in exchange for her cooperation: (1) she was released on

a nonsurety bond;[4] (2) the state filed substitute charges (which did not include a charge of perjury); and (3) the state did not recommend a sentence." (Footnote added.) Even if we assume that these allegations are true, the petitioner's reliance on *Gomez* is still misplaced. *Gomez* applies only when a petitioner establishes (1) the existence of an agreement between the state and a witness *and* (2) that the witness did, in fact, receive some benefit as a result of the agreement. See *Gomez* v. *Commissioner of Correction*, supra, 336 Conn. 176. Our review of the record in the present case confirms the finding of the habeas court that "the petitioner has failed to prove that the [state] had entered into a[n] . . . agreement or understanding, either formal or informal, with Donofrio."[5] With respect to the petitioner's due process claim, we conclude that the habeas court's finding that the petitioner had not proved that an agreement or understanding existed between the state and Donofrio is supported by substantial evidence. *Greene* v. *Commissioner of Correction*, supra, 330 Conn. 29. Accordingly, we conclude that the finding of the habeas court that no agreement or understanding existed between the state and Donofrio with respect to her testimony precludes the application of the law set forth in *Gomez* to the petitioner's claim.

The judgment is affirmed.

[1] Specifically, our Supreme Court summarized Donofrio's testimony as follows: "In May, 1993, the [petitioner] terminated his relationship with Donofrio and moved in with another woman. Two months later, Donofrio contacted the West Haven police to report that the [petitioner] had killed the victim. Thereafter, Donofrio explained that she and the [petitioner] had discussed his plans to murder the victim at least one week prior to the murder. Specifically, the [petitioner] told Donofrio that he loved her and could not afford a divorce, that he intended to kill the victim by strangulation, and that he would commit the murder on a Tuesday because he did not work on Wednesday.

"Donofrio testified that the [petitioner] telephoned her between 6 and 6:30 p.m. on Tuesday, January 28, 1992, to tell her that he was in the process of killing the victim and that he needed her assistance. When Donofrio arrived at the [petitioner's] home a few minutes later, she found the [petitioner] and the victim in the couple's bedroom. The victim was lying on the bed, face down and unconscious. The [petitioner], who was on top of the victim, was strangling her with an extension cord. Because the victim continued to exhibit a pulse, the [petitioner] began to strangle her manually, holding his thumbs on the back of her head and his fingers at the front of her neck. Donofrio then helped the [petitioner] move the victim from the bed onto the floor, where they took turns smothering her with a pillow until she had no pulse." *State* v. *Bova*, supra, 240 Conn. 216.

[2] The petitioner's prior petitions for a writ of habeas of corpus were unsuccessful. See *Bova* v. *Commissioner of Correction*, 162 Conn. App. 348, 131 A.3d 268, cert. denied, 320 Conn. 920, 132 A.3d 1094 (2016); *Bova* v. *Commissioner of Correction*, 95 Conn. App. 129, 894 A.2d 1067, cert. denied, 278 Conn. 920, 901 A.2d 43 (2006).

[3] The petitioner has not appealed from the judgment of the habeas court dismissing in part and denying in part his claims of prosecutorial impropriety, judicial misconduct, and insufficient probable cause.

[4] During the habeas trial, the petitioner did not offer the transcript of Donofrio's arraignment as an exhibit, and, therefore, there is no evidence to support the petitioner's argument that the prosecutor suggested that this "benefit" was provided to her.

[5] The habeas court set forth the following facts in support of its finding that no agreement or understanding existed between the state and Donofrio: "On February 23, 1995, Donofrio pleaded guilty to conspiracy to commit murder and making a false statement to the police before the same trial judge, *Gormley, J.*, who had presided over the petitioner's [criminal] trial. Prior to the entry of Donofrio's guilty pleas, the prosecutor . . . indicated that she was filing

a substituted information as a result of a judicial pretrial that had occurred subsequent to the jury's verdict in the petitioner's case. [The prosecutor] stated that 'prior to the time of this pretrial which occurred after the guilty verdict was entered on [the petitioner], there had been no representation to defense counsel or to the court as to what the state would do.' Donofrio's counsel . . . confirmed that 'there were never any agreements that were entered into by us and the state regarding any disposition of the case.' Judge Gormley also stated that 'there were no discussions with reference to a disposition of [Donofrio's] case prior to the verdict being entered in the case of [the petitioner].' The court indicated disposition for Donofrio's guilty pleas was a maximum sentence of twelve years, execution suspended after the service of six years, followed by probation, with Donofrio's counsel having the opportunity to argue for a lesser sentence.

"Donofrio was sentenced on April 6, 1995, to a total effective sentence of ten years of incarceration, execution suspended after the service of four years, followed by a period of probation of three years. During the sentencing hearing, the trial court stated: 'One further thing the court wants to say and to say very clearly and categorically, and that is that there have been no deals at all in this case. I read in the paper this morning that the Bova family still believes, and will believe until their dying days, that there has been a deal. I can't change how they feel and they can feel there's been a deal for as long as they want. I can only tell them that there has been no deal, none that I've participated in.' "

————————————————————